GEORGE T. JOHNSON, Defendant in Error, *v.* ELIJAH SCOTT, *et al.*, Plaintiffs in Error.

*Vendor's Lien.*—The vendor of land who has given his bond for a conveyance upon full payment of the notes given for the purchase money, cannot be required to convey to an assignee of the vendee until the purchase money be paid, although he may have given up the notes and have accepted a new note from the vendee with collateral security.

Johnson v. Scott et al.

*Error to Callaway Circuit Court.*

*Robinson* and *Hockaday*, for plaintiffs in error.

I. It is a settled doctrine of equity, that where the vendor has conveyed the legal title of land to the vendee, and takes the note of the vendee with the surety of a third party for the purchase money, the lien is discharged by taking such security. (2 Sto. Eq. 590, n. 27, 7th ed. and authorities thereunder; 4 Kent's Com. 151–153, 3d ed. ; 1 White & T. L. C., Am. ed. 273, and cases there cited; 1 Mason, 212; 4 Wheat. 291; 1 John. Ch. 309; 3 J. J. Mar. 163; 1 Paige, 20 ; 5 Ohio, 18 ; 1 Gilm. 501 ; 11 Ill. 606.)

In an action like the present, where the legal title is not conveyed, and only an equitable title passes, the nature and extent of the lien is the same, the proceedings to enforce it are the same, and there is no good reason why there should be a distinction made between this and the other cases as to what constitutes a waiver of the lien. The retaining of the legal title in himself is only designed by the vendor, and construed by the law, to be evidence of a manifest intention to retain a lien on the land for the purchase money. He certainly has a right to waive the lien if he so desires, and may waive it by his own act. Whenever there is an intention on the part of the vendor to waive the lien it is discharged, and the only question is as to what acts constitute sufficient evidence of an intention to waive the lien, so as to countervail the evidence of an intention to retain it, contained in his withholding the legal title. Delassus v. Poston, 19 Mo. 425, and Adams v. Cowherd, 30 Mo. 458, recognize this doctrine. (Francis v. Hazlerigg's Ex'rs, Hardin, Ky. 48 ; 3 J. J. Mar. 558–9; 10 B. Mon. 282.)

II. "Conduct which shows an intention to give up the lien, or which makes it inequitable for the vendor to insist upon it, as against the vendee or third persons, will as against such persons be a bar to its assertions." (1 White & T. L. C., Am. ed. 273 ; 12 Leigh 332–43 ; 2 Marsh. 294; 3 J. J. Marshall, 553–8.) This contract between Johnson

and Nolley and Ford discharges Scott from liability, and discharges the lien on the land in Scott's hands.

III. The agreement entered into between Johnson and Nolley, in taking Nolley's note with Ford as security so changed the original contract made with Fisher as to destroy the mutuality of the covenants in the bond, and Johnson and Scott are both left to pursue their remedies alone upon the instruments held by them respectively; Scott, having taken up both the notes for the purchase money, can demand a title to the land, whether the note taken by Johnson in satisfaction of one of them has been paid or not, Scott not being liable on that note; and Johnson must look for his remedy to the personal credit of Nolley and Ford, which he voluntarily accepted. (Brand v. Vanderpool, 8 Mo. 507.)

IV. Scott having paid off the last instalment of the purchase money (Fisher's note) at its maturity, and the land being discharged from any legal or equitable lien for the first instalment, he has a right to have a title decreed him as prayed for in his answer.

*H. C. Hayden,* for defendant in error.

I. It is insisted that the court below committed no error in giving judgment for Johnson, and enforcing the lien against the land. There was no evidence to show a design on the part of Johnson to surrender the lien. He retained the legal title—a circumstance decisive under the adjudications of this court. If there was an understanding that the lien was to be relinquished, why did Johnson retain the legal title? But defendant Scott does not insist upon an actual discharge of the lien, but upon a constructive surrendering of the lien. (Delassus v. Poston, 19 Mo. 425; 23 Mo. 447; 30 Mo. 458.)

BATES, Judge, delivered the opinion of the court.

Johnson sold to one Fisher a lot of ground, for which Fisher gave him two promissory notes, each for three hundred

dollars, in each of which notes it was specified, that it was "part consideration given" for the lot bought of the plaintiff, it being also stated as follows : " His title bond to me bears even date herewith."

The plaintiff gave to Fisher his title bond, in which he recited the sale and the execution of the two notes, called therein bonds, as the considerations for the sale, and bound himself to make to " Fisher, his heirs or assigns, a good and sufficient general warrantee deed to the lot of ground, with all the appurtenances thereto belonging, so soon as the two bonds aforesaid, together with accruing interest, according to the tenor and effect of said bonds, are fully paid." Fisher assigned the title bond to the defendants Nolley & Scott. Nolley subsequently assigned the same to Scott.

This suit was brought by Johnson to enforce his vendor's lien for a portion of the purchase money. The petition stated that the second of said notes had been nearly all paid, and that the plaintiff took, in lieu of the first one, a note of Nolley and the other defendant Ford, dated on the day of the maturity of the first note, (November 15, 1858,) and payable on the first day of October, 1859. Nolley and Ford did not answer the petitions.

Scott answered and denied that the note of Nolley and Ford was given in lieu of one of the notes given by Fisher, and averred that he had fully discharged and satisfied the notes given for the original purchase money for said property, and produced them in court, and prayed judgment that the plaintiff be compelled to make him a deed of conveyance of the property.

At the trial the plaintiff called Fisher as a witness, who described his purchase of the lot from the plaintiff and his giving notes therefor, and stated that the notes had never been surrendered to him. He then called Ford, who testified that he signed the notes sued on as surety for Nolley, but that he did not know what was the consideration of it, and had no further knowledge of the transaction.

He then called Nolley, who testified : " I gave the note

sued on in this case in lieu of the note that he held on Fisher. I wanted the use of the money and gave my note with D. D. Ford as security, and took up the note he held on Fisher. Scott and myself borrowed the money to pay the note off, and the money was placed in my hands for that purpose. I do not remember that anything was said by me to Johnson about the lien upon the property ; I think nothing was said about it. I do not remember that anything was said to me by Johnson about the money in my hands to pay the note. I believed at that time that the note I was making to Johnson was perfectly good with Ford as security. I wanted to settle the matter at that time with Scott, and made this change of notes with Johnson that I might do so."

The defendant Scott only gave in evidence the title bond and the two notes given by Fisher to the plaintiffs.

Judgment was given for the plaintiffs against Nolley and Ford for the balance due on their note, and also subjecting the lot of ground to a lien for the amount of that judgment, and ordering its sale for the satisfaction of that judgment.

Scott has brought the case to this court by writ of error.

In this case the bond expressly stipulated that the conveyance was to be made so soon as the consideration was paid, and consequently, unless there was an express waiver of the lien, (which would not result from the mere acceptance of other security,) the lien remains in force until full payment of the consideration.

The question is, therefore, whether the consideration has been *paid*. The evidence does not show *payment;* although the old note was in effect cancelled, another was substituted for it, and the debt still remained unpaid.

The hardship upon Scott of having to pay a portion of the consideration twice, does not result from the action of the plaintiffs, but from the fraudulent conduct of Nolley.

Judgment affirmed. Judges Bay and Dryden concur.